IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROLLING THUNDER, LLC, et al.,<br><br>        Plaintiffs,<br><br><br><br>vs.<br><br><br><br>INDIAN MOTORCYCLE INTERNATIONAL, LLC,<br><br>        Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND MOOTING MOTION FOR TRANSFER OF VENUE<br><br><br><br><br><br>Case No. 2:07-CV-52 TS |

This matter is before the Court on Defendant's Motion to Dismiss[1] and Motion to Transfer Venue.[2]  Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

I.  INTRODUCTION

Plaintiff Rolling Thunder is a Washington State limited liability company.  Plaintiff John L. White is a resident of the State of Washington.  Plaintiffs' counsel is based in Utah.

---

[1]Docket No. 5.

[2]Docket No. 9.

1

Defendant Indian Motorcycle International ("IMI") is a Delaware limited liability company with its principal place of business in Kings Mountain, North Carolina.

Plaintiffs manufacture and/or distribute motorcycles, motorcycle engines, and accessories, under a variety of marks, including the mark "CRAZY HORSE," "CRAZY HORSE" with a Native American image logo, and "V-Plus 100."

Defendant seeks to reintroduce to the market, after years of absence, through manufacture and sell, motorcycles under the "Indian" name. These motorcycles are based upon motorcycles of the same name, made famous in the early 1900s. In 2004, IMI acquired the intellectual property rights for the Indian motorcycle, including trademarks relating to the name INDIAN, and the INDIAN Head Dress trademark.

Throughout 2006, IMI exhanged emails with White related to his interests in the Indian motorcycle, his intent to purchase engine parts from a supplier of a former company that manufactured Indian motorcycles, his desire to purchase an Indian motorcycle, and an offer by him to sell his engine parts to IMI.

However, in January 2007, IMI became aware that White and Rolling Thunder intended to exhibit an alleged Indian motorcycle engine, along with a mark allegedly similar to IMI's INDIAN Head Dress trademark, at an event in Cincinnati, Ohio. IMI subsequently sent at least one "cease and desist" letter to Plaintiffs' counsel in Utah to inform them of potential infringement. Counsel for Plaintiffs filed this Utah declaratory judgment action in response, seeking a judgment solely on the trademark infringement issue. Plaintiffs subsequently exhibited the aforementioned engine and mark.

Defendants now moves for dismissal for lack of personal jurisdiction, or, in the alternative, for a change of venue to the Western District of North Carolina. The Court, having reviewed the memoranda and affidavits, issues the following ruling.

## II.  DISCUSSION

*A.  Defendant's Motion to Dismiss*

"When the evidence presented on the motion to dismiss consists of affidavits and other written materials [as is the case here], the plaintiff need only make a prima facie showing."[3] "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor . . . ."[4]

"'To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment.'"[5] Similarly, in a federal question case, the federal court must determine "(1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'"[6] "It is

---

[3]*Bell Helicopter Textron, Inc. v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004).

[4]*Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir. 1990).

[5]*Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).

[6]*Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000).

frequently helpful to undertake the due process analysis first, because any set of circumstances that satisfies due process will also satisfy the long-arm statute."[7]

To satisfy the constitutional requirement of due process, there must be "minimum contacts" between the defendant and the forum state.[8] The "minimum contacts" standard may be met by a finding of either general jurisdiction or specific jurisdiction.

For general jurisdiction to exist, "'the defendant must be conducting substantial and continuous local activity in the forum state.'"[9] The parties' arguments focus almost exclusively on specific, rather than general personal jurisdiction, and the Court will proceed by examining specific jurisdiction.

When the "defendant has 'purposely directed' his activities at residents of the forum," courts in that state may exercise specific jurisdiction in cases that "arise out of or relate to those activities."[10] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[11] "This requirement of 'purposeful availment' for purposes of specific jurisdiction precludes personal jurisdiction as the result of 'random, fortuitous, or attenuated contacts.'"[12]

---

[7]*Sys. Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).

[8]*World-Wide Volkswagen Co. v. Woodson*, 444 U.S. 286, 291 (1980).

[9]*Soma*, 196 F.3d at 1295 (quoting *Arguello v. Woodworking Mach. Co.*, 838 P.2d 1120, 1122 (Utah 1992)).

[10]*Burger King v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).

[11]*Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).

[12]*Bell Helicopter*, 385 F.3d at 1296 (citing *Burger King*, 471 U.S. at 475.)

In addition to minimum contacts, "[a] district court must also consider whether personal jurisdiction is reasonable in light of the circumstances surrounding the case."[13]

Defendant argues that there is no specific jurisdiction over it for several reasons. First, Defendant argues that it has not purposefully directed activities at residents of Utah. Defendant argues that its only contact with Utah—cease and desist letters—are not sufficient contacts for personal jurisdiction. Defendant acknowledges that, in the past and currently, it maintains a website which is essentially non-interactive in that it does not sell products. Defendant concedes that its website did, at the relevant time in dispute, contain a link to a licensee for the sale of products containing the INDIAN trademarks, as well as the opportunity to place orders for motorcycles which will be produced in the future. However, Defendant argues that a licensee's acts are insufficient to confer jurisdiction upon a licensor. Finally, Defendant argues that, to the extent they exist, any contacts it has made with Utah from its website are not sufficiently related to this action, which arose merely from Defendant's letter to Plaintiffs' Utah-based counsel, not from any activity which occurred from its website, as Plaintiffs seemingly allege.

Plaintiffs make several arguments in response. First, Plaintiffs argue that a licensee's internet sales can confer jurisdiction. Second, Plaintiffs generally argue that Defendant's assertion of trademark rights is inconsistent with Defendant's position that acts by a licensee cannot confer jurisdiction.[14] Third, Plaintiffs argue that a user of Defendant's website would not

---

[13]*Id.* at 1296 n.1 "Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies." *Id.*

[14]Plaintiff cites no authority for this proposition.

know from following its link that the purchase of trademarked items was not from Defendant. Fourth, Plaintiffs argue that Defendant's website is fully interactive, able to take money and send emails, among other things. Finally, Plaintiffs argue that a sufficient nexus exists between Defendant's contacts and Plaintiffs' allegations because "they relate to sales and advertising of goods bearing the 'INDIAN' marks in Utah."[15]

The Court finds that, even resolving contested facts in favor of Plaintiffs, personal jurisdiction does not exist over Defendant. As a general rule, purposeful availment, and subsequently, jurisdiction in internet contact cases is measured along a sliding scale which depends on the level of interactivity and commercial nature of the exchange of information that occurs on the website.[16] However, the Court need not examine the interactivity of Defendant's website in detail here because the Court finds that, even if purposeful availment existed, the fact that Plaintiffs' declaratory judgment claim regarding trademark infringement does not arise out of or result from the asserted forum-related activities of Defendant is dispositive of the personal jurisdiction issue.

A nexus must exist between a defendant's forum-related contacts and the Plaintiffs' cause of action.[17] This is not satisfied when Plaintiffs would have suffered the same injury even if none

---

[15] Docket No. 10, at 11.

[16] *Xactware, Inc., v. Symbility Solution, Inc.*, 402 F.Supp.2d 1359, 1363-64 (D. Utah 2005) (citing, among other cases, *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1123-24 (W.D. Pa. 1997)).

[17] *TH Agriculture & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1291-92 (10th Cir. 2007).

of the Defendant's forum contacts had taken place.[18]  Here, Plaintiffs' claimed injury is the potential restriction on the use of their trademarks and/or a suit for infringement.  Plaintiffs essentially seek a declaration of non-infringement.  This "injury" is in nowise related to Defendant's website contacts.  In other words, Plaintiffs would be in the same predicament absent Plaintiffs' website.

Given the above, the Court is left with determining whether Defendant's cease and desist letter is sufficient to establish jurisdiction.  Cease and desist letters in this context are not sufficient grounds for a finding of personal jurisdiction as they are too attenuated.[19]

Finally, the Court finds that given the dearth of minimum contacts, the fact that Defendant's website activities are unrelated to Plaintiffs' cause of action, and considering the other abovementioned facts under the appropriate factors, personal jurisdiction is not reasonable in light of the circumstances surrounding the case.  Accordingly, the Court will grant Defendant's Motion to Dismiss.

B. *Defendant's Motion to Transfer Venue*

Because the Court will grant Defendant's Motion to Dismiss, Defendant's Motion to Transfer Venue is moot.

---

[18]*Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456-57 (10th Cir. 1996).

[19]*Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); *Overstock.com, Inc. v. Furnace Brook*, LLC, 420 F.Supp. 2d 1217, 1219-21 (D. Utah 2005).

III.  CONCLUSION

For the foregoing reasons, it is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 5) is GRANTED.  It is further

ORDERED that Defendant's Motion to Transfer Venue (Docket No. 9) is DENIED AS MOOT.  The Clerk of the Court shall close this case forthwith.

DATED   August 10, 2007.

       BY THE COURT:

       _____
       TED STEWART
       United States District Judge